MONTGOMERY PEAT FUEL CO. *v.* J. D. FATE CO.

CORPORATIONS—BILLS AND NOTES—FRAUD—EVIDENCE—SUFFICIENCY. On a bill to enjoin a bank from delivering to defendant corporation a note given by plaintiff corporation to defendant corporation in part payment for machinery, on the ground of fraud, evidence *held*, to show that defendant corporation was engaged in promoting plaintiff corporation.

Appeal from Hillsdale; Chester, J. Submitted October 4, 1917. (Docket No. 29.) Decided December 28, 1917.

Bill by the Montgomery Peat Fuel Company against the J. D. Fate Company and others to enjoin the delivery of a note, and for the cancellation of said note. From a decree for plaintiff, defendant company appeals. Affirmed.

*F. A. Lyon,* for plaintiff.

*Paul W. Chase* and *B. E. Sheldon,* for appellant.

MOORE, J. This case was commenced by the plaintiff against the J. D. Fate Company, an Ohio corporation, Amos Keller, and the Montgomery State Bank, to enjoin the State Bank of Montgomery from delivering to the defendant J. D. Fate Company a promissory note given by the Montgomery Peat Fuel Company to the J. D. Fate Company, dated October 9, 1914, for the sum of $3,950, with interest; it being the claim that the note was procured by fraud. The bill also prays for a cancellation of this note.

A large amount of testimony was given on the part of the plaintiff. No testimony was offered on the part of the defendants. After the testimony was closed

and the case argued the trial judge expressed himself as follows:

"The evidence produced on this trial shows:

"(1) That the J. D. Fate Company was interested in promoting and organizing the Montgomery Peat Fuel Company for the purpose of furnishing the machinery for the operation of the peat plant; that it was understood from the first that the J. D. Fate Company was to furnish the machinery and at a reasonable price, and was to receive stock in the company to apply on the purchase price of the machinery.

"(2) That the J. D. Fate Company charged for the machinery it so furnished a price far beyond its usual selling price or value, so that it (the J. D. Fate Company), if it received pay on the notes, would receive more than its usual asking price for its machinery and have the $4,000 stock for promotion.

"(3) A comparison of itemized prices made the Montgomery Peat Fuel Company with prices made to Mr. Small for the same articles shows as follows:

| | | |
|---|---:|---:|
| Listed to Montgomery Peat Fuel Company, amount | $8,425 | 00 |
| To Small, after discount of 25 per cent.... | 3,090 | 50 |
| Add to the figures given Mr. Small: | | |
| Value of Electrical Machinery, as per evidence | 75 | 00 |
| Value of extra die, as per evidence.......... | 5 | 50 |
| Also T-rails listed to Peat Company at $100 less discount of 25 per cent................ | 75 | 00 |
| Also shafting, etc., listed to Peat Company at $300 less discount of 25 per cent.......... | 225 | 00 |
| Also 500 feet cable at 8c.................... | 40 | 00 |
| Makes a total value of machinery furnished.. | $3,511 | 00 |
| To this add the promotion stock promised of.. | 1,000 | 00 |
| Making a full total to be received by J. D. Fate Co. of.......................... | $4,511 | 00 |
| The J. D. Fate Co. has already received: | | |
| In stock .......................:.. $4,000 00 | | |
| And in cash .................... 1,000 00 | | |
| Or a total of .............. $5,000 00 | | |

—which is $489 more than the rate at which the prop-

erty was listed to Mr. Small, and $489 more than the usual and reasonable selling price of the property and machinery furnished the Montgomery Peat Fuel Company.

"(4) The Montgomery Peat Fuel Company and its stockholders, except Keller and the J. D. Fate Company, did not know of that overcharge for the machinery, and the Peat Company relied on the representations, and believed them as true, that it was getting the machinery at a reasonable price.

"(5) The buying the machinery and installing the plant for effective operation was as much a part of the promotion as the act of incorporating.

"(6) It also appeared on the trial that one of the officers of the J. D. Fate Company was present in court during the trial and another officer of the J. D. Fate Company was there a portion of the time.

"Conclusions of Law.

"(1) Defendants the J. D. Fate Company and Amos Keller were promoters of the organization of the Montgomery Peat Fuel Company and establishing the plant for operation.

"(2) That said defendants as such promoters occupied a fiduciary relation to the complainant and its stockholders.

"(3) That defendants owed the duty to complainant and its then stockholders to deal openly and fairly with them, and not to receive any secret profits that were unreasonable and were unknown to the corporation.

"(4) That a court of equity is a proper forum in which to determine the issues in this case and grant relief.

"(5) From the foregoing findings of fact and conclusions of law it follows that a decree should be entered canceling the note in question in this case."

A decree was entered in accordance with the opinion. The case is here on appeal.

We quote from the brief filed in behalf of the appellant:

"While the theory of the bill is: That the J. D. Fate Company, at Plymouth, Ohio, desired the for-

mation of the Peat Fuel Company, at Montgomery, Mich., with the hope and expectation that it might become its customer in the purchase of machinery and apparatus, yet no witness in the record establishes the shadow even of a connection of the Fate Company with this project until after the incorporation of the Peat Fuel Company. While the bill charges that the Fate Company conspired with Amos Keller to bring about the formation and incorporation of the Peat Fuel Company, yet the record is barren of the slightest intimation that the Fate Company knew that such a movement had been going on at Montgomery until James McCallum's first visit to Plymouth, where he and Amos Keller interviewed said company at its place of business, the occasion which resulted in the shipment of peat from Montgomery to Plymouth for experimentation.   *  *  *

"We say there is nothing in the record to support the finding: 'That the J. D. Fate Company was interested in promoting and organizing the Montgomery Peat Fuel Company' for any purpose whatever. We ask critical attention to this question. We say, further, that nothing in the record supports the claim that: The J. D. Fate Company ever understood that it was to furnish the machinery prior to the execution of contract of date June 16, 1914, when the price was agreed on by both competent parties. We say that the stock of the Peat Fuel Company set forth in the contract as part payment on the machinery has, in fact, never been received by the J. D. Fate Company. We say that on June 16, 1914, when the contract was made, the J. D. Fate Company was in no manner or form of law a promoter of the Peat Fuel Company even though it had been at any time before, which we deny."

An examination of the record makes it evident counsel has overlooked some very persuasive testimony. The first man who conceived the idea of making peat fuel at Montgomery, so far as disclosed by the record, was Amos Keller, who called the attention of James McCallum and his son to the value of the peat deposit on their land. He supplied them with various litera-

ture upon the subject, some of which had the following:

"Peat, Its Origin and Uses.

*    *    *    *    *    *    *    *

"Extracts from United States Geographical Survey,
      "United States Consular Reports and
         "Foreign Government Reports.

*    *    *    *    *    *    *    *

"The J. D. Fate Co., Plymouth, O.
"Manufacturers of Special Peat Briquette Machinery.
      "Amos Keller, Sole Agent, Lima, O."

He interviewed many persons in the neighborhood of the McCallums urging upon them the value of the peat deposit, and the possibilities of a great profit by organizing a company to manufacture the peat into fuel briquettes. He gave them like literature to that given to the McCallums. As the result of his activities a public meeting was called at which he stated that the J. D. Fate Company were successful makers of the machinery required, and that, while ordinarily they would get $15,000 for the machinery, they would supply what was needed in this undertaking for $12,000, and that they would subscribe for $4,000 of the stock. A corporation was finally organized in which the J. D. Fate Company appeared as subscriber for $4,000 of the stock. When the articles of association were sent to the office of the secretary of State, it was stated there that J. D. Fate Company, a corporation, could not subscribe for stock in a Michigan corporation, and the articles were sent to Plymouth, where the subscription of J. D. Fate Company was erased, and H. H. Fate, one of the officers of the corporation, subscribed for the same amount which had been subscribed by J. D. Fate Company, and went before a notary public and acknowledged the signing and execution in proper form by him, and the articles were returned to the office of the secretary of State and duly filed. Later, by direction contained in a letter

from the J. D. Fate Company, the 40 shares of stock so subscribed were issued to Amos Keller. The contract itself commences with these words:

"Price and terms for this complete outfit as outlined above is as follows: J. D. Fate Company is to receive for the machinery f. o. b. cars their works $4,000.00 in stock of the Montgomery Peat Fuel Company, the receipt of which is hereby acknowledged, and $4,950 in cash, as follows: $1,000.00 cash upon signing of this proposition; $3,950 when machinery is set up and in operation."

There is other testimony indicating that Mr. Keller was acting for the J. D. Fate Company, and that they were taking part in what was done. We think it has some significance that, though one of the officers of J. D. Fate Company was present in court during the trial, and another one during a portion of the trial, they remained silent.

It would profit no one to go more into detail. The record abounds with testimony justifying the conclusion of the trial judge.

The decree is affirmed, with costs to the plaintiff.

Kuhn, C. J., and Stone, Ostrander, Bird, Steere, Brooke, and Fellows, JJ., concurred.